**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ALEXANDER W. MEJIAS,**

        **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 3:21cv393**

**HYUNDAI LEASE TITLING TRUST,**

**HYUNDAI CAPITAL AMERICA, INC.**
**D/B/A KIA MOTORS FINANCE**

**and**

**ALL ACCESS SERVICES LLC,**

        **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION AND PRELIMINARY STATEMENT

    1.    This is an action by a consumer alleging damages for violations of the Consumer Leasing Act, ("CLA") 15 U.S.C. §§ 1667 *et seq.,* because of inaccurate lease disclosures, and for violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.,* because the Defendants seized Plaintiff's leased vehicle when they had no right to seize it. A claim is also asserted under the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 *et seq.*, because Hyundai Capital America, Inc. failed to correct erroneous credit reporting. Under state law, Plaintiff also seeks money damages for conversion and for violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 *et seq*.

    2.    Although the CLA mandates specific and accurate disclosures be provided at the time of lease signing, an important disclosure about the taxes that would be due over the course of

the lease was inaccurate. Although the FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair collection practices, here a debt collector seized a car when it had no right to possession. As a furnisher of credit reporting information, Defendant Hyundai Capital America, Inc. failed to correct its inaccurate reporting about this car lease account. In violation of the VCPA, Defendant Hyundai Lease Titling Trust and Defendant Hyundai Capital America, Inc. provided Plaintiff with emails that stated he was current but then declared him in default, and also double-charged him for a repossession that never should have occurred. Then, after he paid all his lease payments and also the amount necessary to buy the car, these Defendants have not provided him the title to the car. Under all these claims, Plaintiff seeks punitive damages as the Court may allow, statutory and actual damages, costs and attorney's fees.

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the CLA, 15 U.S.C. § 1667d(c), the FDCPA, 15 U.S.C. § 1692k(d), and the FCRA, 15 U.S.C. § 1681(p) and has supplemental jurisdiction of the state law claims regarding the same transaction and events under 28 U.S.C. § 1367(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1).

**PARTIES**

5.     Plaintiff Alexander W. Mejias ("Mr. Mejias") is a natural person who resides in Richmond, Virginia. Mr. Mejias is a lessee within the meaning of the CLA, as defined at 15 U.S.C. § 1667(2), and a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3), and as defined by 15 U.S.C. § 1681a(c) of the FCRA.

6.     Defendant ALL ACCESS SERVICES LLC. ("All Access") is a Virginia corporation with its principal place of business located at 2500 Austin Avenue, Henrico, Virginia

23223, and has as its registered agent William H. Dougherty, 8017 Stuarts Hollow Lane, Mechanicsville, Virginia 23111.

7.      Defendant All Access is an entity that uses one or more instrumentalities of interstate commerce or the mails in businesses the principal purpose of which is the enforcement of security interests, including the taking of nonjudicial action to effect dispossession of property claimed as collateral through enforceable security interests.

8.      Defendant HYUNDAI LEASE TITLING TRUST, ("Hyundai Trust") is a foreign statutory trust with its principal place of business located at 10550 Talbert Ave, Fountain Valley, California, 92708, and has as its registered agent National Registered Agents, Inc., located at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

9.      Hyundai Trust is a lessor within the meaning of the CLA, as defined at 15 U.S.C. § 1667(3), who is regularly engaged in consumer leasing.

10.     Defendant HYUNDAI CAPITAL AMERICA, INC., D/B/A KIA MOTORS FINANCE, ("Kia Finance") is a foreign stock corporation with its principal place of business located at 3161 Michelson Dr., Suite 1900, Irvine, CA, 92612-4418, and has as its registered agent National Registered Agents, Inc., located at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

11.     Kia Finance is a furnisher as defined by 12 C.F.R. § 1022.41(c), who furnishes information to consumer reporting agencies about consumers as regulated by 15 U.S.C. § 1681s-2 of the FCRA.

## STATEMENT OF FACTS

12.     In September of 2017, Mr. Mejias leased a Kia Sedona for his personal use from Patrick Kia through a Motor Vehicle Lease Agreement arranged by Hyundai Trust.

13.     A true and accurate copy of that lease is attached as Exhibit A ("the Lease.").

14.     Paragraph 14 of the Lease stated that the estimated total amount of "official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term" would be $1,418.91.

15.     At the time the Lease was signed, Mr. Mejias was charged $1,297.41 in taxes and car fees, as shown in the Itemization of Gross Capitalized Cost, Paragraph 11, line B and C.

16.     With the initial payment of fees and taxes of $1,297.41, the estimated taxes and fees to be paid over the remaining lease term were $121.50.

17.     This estimate was grossly wrong.

18.     Mr. Mejias had no idea that this estimate was grossly wrong.

19.     In Paragraph 21(D)(3), Mr. Mejias agreed to pay at the lease termination a Tax Reserve "to pay personal property tax and other taxes . . . for tax periods occurring before termination."

20.     Hyundai Trust hired Kia Finance to collect the payments from Mr. Mejias and to manage the accounting for the Lease.

21.     Mr. Mejias received an email from Hyundai Trust's agent, Kia Finance, each month that reminded him to pay his lease payment of $359.55.

22.     Specifically, the emails always said the "Current Amount Due" was $359.55.

23.     Attached as Exhibit B is a true and accurate copy of the email sent Wednesday, June 17, 2020.

24.     Mr. Mejias paid his lease payment each month under an autopay feature that was set up the first month.

25.     The email was the only document that Kia Finance regularly sent Mr. Mejias each month.

26.     Kia Finance did not send Mr. Mejias a full account statement each month.

27.     Early in the morning on Tuesday, June 30, 2020, All Access seized Mr. Mejias's Sedona.

28.     All Access seized the vehicle because Kia Finance asked that the car be seized.

29.     Kia Finance had no right to ask that the car be seized.

30.     The next payment was not due until July 2, 2020, as shown on Exhibit B.

31.     At that time, Mr. Mejias was current on all his monthly lease payments.

32.     Before Defendants would return his car, Defendants charged Mr. Mejias a total of $2,257.07.

33.     Mr. Mejias was told this was to cover $1,687.07 in unpaid taxes on the car, a repossession fee of $420.00, and an additional $150.00 for All Access.

34.     Although Mr. Mejias paid Kia Finance the $2,107.07 it was demanding to be paid on Tuesday, June 30, 2020, All Access refused to let him pick up his car until Thursday, July 2, 2020.

35.     At that time, All Access demanded the additional $150.00 before it would release the car.

36.     For the purpose of § 1692f(6), the term "debt collector" as defined by the FDCPA includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. 15 U.S.C. § 1692a(6). ("For the purpose of section 1692f(6) of this title, (the term "debt collector") also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.")

37.     Under the FDCPA, the taking of nonjudicial action to effect dispossession or

disablement of property claimed as collateral through an enforceable security interest is a *per se* unfair practice if there is no present right to possession of the property, when done with respect to property claimed as collateral for a debt incurred primarily for personal, family, or household purposes.

38.     There was no present right to possession of Mr. Mejias's car by anyone other than Mr. Mejias at the time of its seizure.

39.     The subject debt was for a personal automobile purchase and was incurred primarily for personal, family, or household purposes, bringing the seizure of Plaintiff's car within the purview of the FDCPA. 15 U.S.C. § 1692a(5).

40.     Hyundai Trust and its agent Kia Finance had a duty to ensure that it only seized Mr. Mejias's car if the account was in default.

41.     All Access had a duty to ensure that it seized cars only when the car was security for an account in default.

42.     All Access functioned as an agent of Hyundai Trust and Kia Finance for the purpose of taking or threatening to take any nonjudicial action to effect dispossession of property claimed as collateral through enforceable security interests.  *Watson v. United Consumers, Inc*., 2010 U.S. Dist. LEXIS 58916, *10 (ED Va. 2010).

43.     Defendants had no factual basis to seize Mr. Mejias's car.

44.     Defendants had no legal basis to seize his car.

45.     All Access had no right to delay the return of Mr. Mejias's car.

46.     All Access had no right to demand an additional $150.00 before agreeing to return the car.

47.     Regarding the alleged $1,687.07 in unpaid taxes on the car, Kia Finance never sent

any bill for those alleged taxes to Mr. Mejias before it seized the car.

48.     Mr. Mejias could not be in default when he had paid each and every bill he was sent.

49.     Later in 2020, Mr. Mejias wanted to buy the vehicle at the end of the lease.

50.     When he contacted Kia Finance, he was told that he still owed the $420.00 repossession fee.

51.     Kia Finance refused to let him buy the vehicle unless he paid the $420.00 a second time.

52.     Additionally, Kia Finance reported negative information about this account to the three major national credit reporting agencies.

53.     Mr. Mejias tried to correct this situation by sending Kia Finance a letter dated September 1, 2020.

54.     A true and accurate copy of the letter is attached as Exhibit C.

55.     Kia Finance did not correct the inaccurate reporting.

56.     Specifically, Kia Finance reported this account as repeatedly late in 2020.

57.     Other than the Kia Finance reporting, Mr. Mejias has excellent credit.

58.     In January 2021, Plaintiff sent dispute letters to Experian, Trans Union, and Equifax by certified mail, return receipt requested, disputing the Kia Finance reporting. These letters were all received.

59.     After contacting Kia Finance, on January 30, 2021, Equifax responded to the dispute and said it was updating the account with information from Kia Finance. This information was still reporting more than thirty days late in April 2020, and more than sixty days late in May 2020.

60. After contacting Kia Finance on February 9, 2021, Trans Union responded to the dispute and updated the tradeline to include 'redeemed repossession' while still reporting more than thirty days late in April 2020, and more than sixty days late in May 2020.

61. After contacting Kia Finance, on February 10, 2021, Experian responded to the dispute and undated the tradeline as accurate, but it continues to report it as thirty days late in May 2020, and more sixty days late in June 2020.

62. Because of his otherwise excellent credit reporting, the information that Kia Finance refuses to correct is harming Plaintiff's credit standing and that harm is continuing.

63. In September 2020, when the lease term was reached, Plaintiff was told by Kia Finance that if he paid $15,981.80, he could purchase the car.

64. In September 2020, he then paid this amount in full to Kia Finance.

65. Kia Finance has never sent him the title and continues to withhold it from him.

66. Because Virginia is a strict title state, ownership of the car is determined strictly by whose name is on the title.

67. By withholding the title from Plaintiff, Kia Finance is withholding ownership the car from Plaintiff.

68. Because of Defendants' conduct, Plaintiff lost possession of his car for over two days, was charged fees he never should have been charged, and has never received the title even though he had paid all the money.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT – DEFENDANT ALL ACCESS

69. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

70. By the repossession, Defendant All Access took nonjudicial action to effect dispossession or disablement of Plaintiff's car at a time when there was no present right to possession of the vehicle, in violation of U.S.C. § 1692f(6).

71. As a result of the acts and omissions of Defendant All Access, Plaintiff has suffered actual damages and injury, including but not limited to, stress, mental anguish and suffering, emotional distress, humiliation and embarrassment, and loss of the use of his vehicle.

## SECOND CAUSE OF ACTION
## NEGLIGENCE – DEFENDANT KIA FINANCE

72. The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

73. Kia Finance was negligent in requesting the seizure of the vehicle because it had a duty not to take property it had no right to take and in breach of that duty instructed All Access to take it.

74. Kia Finance was negligent in not sending the title to Plaintiff even though he paid for it in full.

75. Kia Finance had a duty to sign the title over to Plaintiff and deliver it to him.

76. As a direct and proximate result of Kia Finance's negligence, Plaintiff has suffered actual damages and injury, including but not limited to, stress, mental anguish and suffering, emotional distress, loss of the use of his vehicle, and not receiving the ownership after he paid.

77. Kia Finance acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and as to justify an award of punitive damages against it.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CONSUMER LEASING ACT –**
**DEFENDANT HYUNDAI TRUST**

78.     The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

79.     Under 15 U.S.C. § 1667a(3) of the Consumer Leasing Act, and Regulation M, 12 C.F.R. § 1013.4(n), Hyundai Trust was to disclose in the lease both the amount of all taxes and fees that were paid or payable by Mr. Mejias in connection with the lease.

80.      As explained in the Official Interpretations to Regulation M, "[i]n disclosing the total amount of fees and taxes under § 213.4(n), lessors may need to base the disclosure on estimated tax rates or amounts and are afforded great flexibility in doing so. Where a rate is applied to the future value of leased property, lessors have flexibility in estimating that value, including, but not limited to, using the mathematical average of the agreed upon value and the residual value or published valuation guides; or a lessor could prepare estimates using the agreed upon value and disclose a reasonable estimate of the total fees and taxes." 12 C.F.R. Supp. I, Sect. 1013.4, Comment 4(n)-2.

81.     The disclosure of the estimated total taxes in the lease was not a reasonable estimate because Hyundai Trust knew at the time of the disclosure that the total taxes it would ask Mr. Mejias to pay were far greater than the estimate that was provided.

82.     Mr. Mejias did not know that the estimated disclosure of the taxes he would be asked to pay was grossly understated.

83.     Mr. Mejias had no way to learn that Hyundai Trust would actually ask him to pay far more.

84.     Hyundai Trust, through its agent Kia Finance, actively concealed from Mr. Mejias

that it was requiring him to pay far more taxes until the time of the repossession in late June 2020.

85.     This fact was concealed because each month Kia Finance sent emails that stated the only amount due was the normal monthly payment.

86.     Mr. Mejias relied upon those emails and believed that he was current with all his obligations under the lease.

87.     Under 15 U.S.C. § 1667d(c), Mr. Mejias has filed this action within one year of the termination of his lease agreement, and also within one year of when he was first able to learn that the estimated disclosure was inaccurate.

88.     Under 15 U.S.C. § 1667d(c), Hyundai Trust is liable under 15 U.S.C. § 1640(a)(2)(A)(ii), for statutory damages in the amount of $2,000.00, and is also liable under 15 U.S.C. § 1640(a)(1) and (3) for actual damages and reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION
### CONVERSION DURING THE REPOSSESSION
### DEFENDANTS KIA FINANCE and ALL ACCESS

89.     The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

90.     Defendants' actions in seizing Plaintiff's car when they had no right to do so and not returning it as demanded constituted the tort of conversion, entitling Plaintiff to recover, among other things, the value of his vehicle at the time and the place of the taking.

91.     As a direct and proximate result of Defendants' conversion, Plaintiff has suffered actual damages and injury, including but not limited to, stress, mental anguish and suffering, emotional distress, humiliation, fear, disruption of and stress within his family life, and lost time.

92.     Kia Finance acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of

the rights of Plaintiff, and as to justify an award of punitive damages against Kia Finance.

## FIFTH CAUSE OF ACTION
## CONVERSION AFTER LEASE ENDED
## DEFENDANTS KIA FINANCE and HYUNDAI TRUST

93.     The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

94.     Defendants' actions in taking the $15,981.80 payment to buy the car and then not signing the title and delivering it to Plaintiff constituted the tort of conversion, either of Plaintiff's money or the title, entitling Plaintiff to recover, among other things, $15,981.80.

95.     As a direct and proximate result of Defendants' conversion, Plaintiff has suffered actual damages and injury, including but not limited to, stress, mental anguish and suffering, emotional distress, humiliation, fear, disruption of and stress within his family life, and lost time.

96.     Kia Finance acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and as to justify an award of punitive damages against Kia Finance.

## SIXTH CAUSE OF ACTION
## TRESPASS TO CHATTELS –
## DEFENDANTS KIA FINANCE and ALL ACCESS

97.     The allegations of the foregoing paragraphs of the Complaint are incorporated by reference.

98.     Defendants' actions in intentionally seizing Plaintiff's vehicle while it was in the rightful possession of the Plaintiff, and dispossessing Plaintiff of his Sedona constituted a trespass to chattels, entitling Plaintiff to recover, among other things, the value of his vehicle at the time and the place of the taking, the loss of use of Plaintiff's vehicle resulting from the trespass to his property.

99.     As a direct and proximate result of Defendants' trespass, Plaintiff has suffered actual damages and injury, including but not limited to, stress, mental anguish and suffering, emotional distress, humiliation, fear, disruption of and stress within his family life, and lost time.

100.     Kia Finance acted with actual malice, gross negligence and reckless disregard for Plaintiff's rights and interests, and in such a fashion as to evince a willful and wanton disregard of the rights of Plaintiff, and as to justify an award of punitive damages against it.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF FAIR CREDIT REPORTING ACT
### DEFENDANT KIA FINANCE
### 15 U.S.C. §1681s-2(b)(1)(A)

101.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

102.     Kia Finance violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes about the false credit information being reported about him.

103.     When Plaintiff mailed his disputes to the consumer reporting agencies, they used a dispute system named "e-Oscar", which has been developed by the credit reporting agencies and provided to their furnisher customers such as Kia Finance.  It is an automated system and the procedures used by the consumer reporting agencies and the furnishers are systemic and uniform.

104.     When the consumer reporting agencies receive a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

105.     The ACDV form is the method by which Kia Finance has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(1).

106.     On information and belief, it is extremely rare – certainly less than 1% of the time – that Kia Finance will receive a consumer's dispute sent through the consumer reporting agencies other than through the e-Oscar system.

107.    On information and belief, to date, Kia Finance has never complained to the consumer reporting agencies about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

108.    The consumer reporting agencies did in fact forward Plaintiff's dispute via an ACDV to Kia Finance.

109.    Kia Finance understood the nature of Plaintiff's disputes when it received the ACDV's from the consumer reporting agencies.

110.    When Kia Finance agent who conducted Kia Finance's investigation received the ACDV's, it should have reviewed the documents that Kia Finance possessed and Kia Finance's previous communications with Plaintiff and determined Kia Finance had sent emails each month that stated the only amount due was the monthly payment, and that these payments had all been made on time.

111.    That Kia Finance agent should not have simply checked the computerized account records to see if those were showing that some amounts were not paid.

112.    The law in this District, the Fourth Circuit, and even nationally was long ago set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute from consumer reporting agencies.

113.    Kia Finance was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's dispute.

114.    Kia Finance was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

115.    The procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar

were the procedures that Kia Finance intended its employees or agents to follow.

116.    Kia Finance's agent did not make a mistake (in the way in which he or she followed Kia Finance's procedures) when it received, processed and responded to the ACDVs.

117.    Instead, Kia Finance followed its standard and systemically unlawful process when it receives an ACDV dispute.  Basically, all Kia Finance does is review its own internal computer screen for the account and repeat back to the ACDV system the same information Kia Finance already had reported to the consumer reporting agencies.

118.    When Kia Finance receives a consumer's dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computerized account system is itself accurate.

119.    As a result of Kia Finance's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

120.    The violations by Kia Finance were willful, rendering Kia Finance liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

121.    Kia Finance has not materially changed its FCRA investigation procedures after learning of its failures in this case.

122.    In the alternative, Kia Finance was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

123.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Kia Finance in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF FAIR CREDIT REPORTING ACT**
**DEFENDANT KIA FINANCE**
**15 U.S.C. §1681s-2(b)(1)(B)**

124.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint, particularly though not limited to the facts as pled in the "Statement of Facts" section of the Complaint and the previous Cause of Action.

125.     Kia Finance violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

126.     As Plaintiff detailed in the Seventh Cause of Action, Kia Finance has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

127.     Kia Finance failed to review all the information provided by the consumer reporting agencies through the ACDV process.

128.     As a result of Kia Finance's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

129.     The violations by Kia Finance were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Kia Finance was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

130.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Kia Finance in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**NINTH CAUSE OF ACTION**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**
**DEFENDANTS KIA FINANCE and HYUNDAI TRUST**

131.     Pursuant to Va. Code § 59.1-204, Plaintiff is entitled to pursue a VCPA claim

against Kia Finance and Hyundai Trust because each of these acted as a "supplier" in a "consumer transaction" as those terms are defined in Va. Code § 59.1-198.

132.    These Defendants violated the prohibition contained in Va. Code § 59.1-200(A)(14) against using any misrepresentation in connection with a consumer transaction by sending emails that stated the only amount due was the monthly payment while placing the account in default status even though all those monthly payments were made on time, and by ordering the Sedona to be seized even thought all payments had been made for every bill that had been sent to Mr. Mejias, and by withholding the title even though Plaintiff paid them the $15,981.80 that they said was the amount necessary for him to become the owner.

133.    These Defendants also violated the prohibition contained in Va. Code § 59.1-200(A)(13) against attempting to collect any penalties under any clause that is void under the laws of the Commonwealth of Virginia when Defendants seized the car and charged fees for that seizure even though all payments had been made as required by the lease.

134.    These Defendants violated the prohibition contained in Va. Code § 59.1-200(A)(8) against refusing to sell goods on the terms offered by withholding the title even though Plaintiff paid them the $15,981.80 that they said was the amount necessary for him to become the owner.

135.    These Defendants committed these VCPA violations deliberately and willfully, or in the alternative did so negligently as a result of not maintaining procedures reasonably adopted to avoid the violations.

136.    As a result of the VCPA violations against him, Mr. Mejias suffered a loss, including but not limited to, the loss of the terms that he accepted, the loss of his car, lost time, and inconvenience and other distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

1.      Declaratory relief that Defendant All Access violated the Fair Debt Collection Practices Act;

2.      Award Plaintiff statutory damages of $1000.00 against Defendant All Access for its violations of the Fair Debt Collection Practices Act;

3.      Award Plaintiff actual damages against Defendant All Access for its violations of the Fair Debt Collection Practices Act;

4.      Award Plaintiff actual damages against Defendant Kia Finance for its negligence;

5.      Award actual damages against Defendant Hyundai Trust for its violations of the Truth in Lending Act;

6.      Award Plaintiff statutory damages of $2,000.00 against Defendant Hyundai Trust for its violations of the Consumer Leasing Act;

7.      Award actual damages against Defendants Kia Finance and All Access for their conversion of Plaintiff's vehicle at the time of repossession, and also actual damages against Defendants Kia Finance and Hyundai Trust for their conversion of Plaintiff's title or his payment when he bought the vehicle at the lease end;

8.      Award actual damages against Defendants Kia Finance and All Access for their trespass to chattels with respect of Plaintiff's vehicle;

9.      Award Plaintiff punitive damages against Defendant Kia Finance for its gross negligence and willful and wanton disregard of Plaintiff's rights not to exceed $350,000.00;

10.      Award actual damages, or at minimum $500.00, against Defendants Kia Finance and Hyundai Trust for their violations of the Virginia Consumer Protection Act;

11.    Award treble actual damages, or at minimum $1000.00, against Defendants Kia Finance and Hyundai Trust for their willful violations of the Virginia Consumer Protection Act;

12.    Award Plaintiff actual, statutory and punitive damages against Defendant Kia Finance for its violations of the Fair Credit Reporting Act.

13.    Award Plaintiff costs and attorney's fees against Defendant All Access for its violations of the Fair Debt Collection Practices Act.

14.    Award Plaintiff costs and attorney's fees against Defendant Hyundai Trust for its violations of the Consumer Leasing Act.

15.    Award Plaintiff costs and attorney's fees against Defendant Kia Finance for its violations of the Fair Credit Reporting Act and the Virginia Consumer Protection Act.

16.    Such other relief as may be just and proper.

**TRIAL BY JURY IS DEMANDED**

                                        Respectfully submitted,
                                        Alexander W. Mejias
                                        By Counsel

 _/s/_____
By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
Telephone (804) 861-6000
Facsimile (804) 861-3368
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA  23601
Telephone (540) 442-7706
tom@clalegal.com

Counsel for Alexander Mejias